IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY SMITH, | : Civil No. 3:15-cv-1013 |
|     Plaintiff | : |
| | : (Judge Mariani) |
| v. | : |
| | : |
| FEDERAL BUREAU OF PRISONS, | : |
| et al., | : |
|     Defendants | : |

## MEMORANDUM

Plaintiff, Jeremy Smith, an inmate formerly housed at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, commenced this *Bivens*[1], 28 U.S.C. § 1331, civil rights action on May 26, 2015. (Doc. 1). Named as Defendants are the Federal Bureau of Prisons ("BOP"); Charles Samuels, Jr., Director of the BOP; and the following BOP employees at USP Lewisburg: David Ebbert, Warden; Kevin Pigos, Physician and Clinical Director; Francis Fasciana, Physician Assistant; S. Brown, Health Services Administrator; and, L. Potter, Paramedic.

Presently pending before the Court is Defendants' motion for summary judgment. (Doc. 19). Plaintiff failed to respond to the motion, and the time for responding has now passed. Therefore, in the absence of any timely response by Plaintiff, the motion is

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

deemed ripe for resolution. For the reasons set forth below, the motion will be granted.

## I. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## II. Statement of Undisputed Facts

Rule 56 of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the

3

motion." FED. R. CIV. P. 56(e)(2). Similarly, Middle District of Pennsylvania Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1. Plaintiff failed to file a responsive statement of facts as required by the Federal Rule of Civil Procedure 56(e)(2) and Local Rule 56.1. Thus, the undisputed facts, taken from Defendants' statement of material facts, (Doc. 23, Statement of Material Facts ("SMF")), and the exhibits submitted therewith, are as follows.

Plaintiff is serving a 70-month sentence with a projected release date of April 5, 2016. (Doc. 23, SMF ¶ 1). Plaintiff was housed at USP Lewisburg from September 19, 2011 through October 26, 2015. (Doc. 23, SMF ¶ 2; Doc. 23, Ex. A, Attach. 2, BOP SENTRY Report, Inmate History). Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. (Doc. 1; Doc. 23, SMF ¶ 3). Specifically, Plaintiff alleges that he requested that medical staff re-prescribe his "hypertension medications hydrochlorozide" and "anti psychotic and depression medications," but his requests were repeatedly refused. (Doc. 1 at 6; Doc. 23, SMF ¶ 3). Plaintiff further alleges that Defendant Brown did not have him immediately evaluated after he submitted a grievance complaining about his hypertension. (*Id.*).

In his prayer for relief, Plaintiff requests, *inter alia*, a preliminary and permanent

injunction directing Defendants and all BOP "to stop denying medical care and physically assaulting me by hard steel ambulatory restraints or any other wanton infliction of pain." (Doc. 1 at 7; Doc. 23, SMF ¶ 4).

In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates. (Doc. 23, SMF ¶ 14). A search of BOP records was conducted for any administrative remedies filed by Plaintiff at the national/central office level during the time period from September 19, 2011, the date he arrived at USP Lewisburg, through February 1, 2016. (Id. at ¶ 15). This search revealed that Plaintiff filed eight administrative remedy appeals at the national level while housed at USP Lewisburg. (Id. at ¶ 17). All eight of these administrative remedies were rejected. (Id.).

On February 4, 2013, Plaintiff filed Remedy Number 713911-A1 with the BOP Central Office, complaining that his ambulatory restraints were too tight. (Id. at 18). The remedy was rejected on February 10, 2013 because Plaintiff failed to submit the request on the proper form, and failed to provide a copy of the institution administrative remedy request. Plaintiff was advised that he could resubmit his appeal within fifteen days. (Id. at ¶ 19). Plaintiff did not resubmit this remedy. (Id. at ¶ 20).

On February 11, 2013, Plaintiff filed Remedy Number 722617-A1 with the BOP Central Office, requesting "transfer to medical facility with mentally ill." (Id. at ¶ 21). On February 13, 2013, the remedy was rejected because Plaintiff failed to first submit his

5

request at the institution level. (*Id.* at ¶ 22).

On July 21, 2014, Plaintiff filed Remedy Number 785551-A1 with the BOP Central Office, pertaining to a "staff complaint." (*Id.* at ¶ 23). This remedy was rejected on August 25, 2014 because it was submitted to the wrong level, the issue raised was not sensitive, and Plaintiff failed to attempt informal resolution prior to submitting the remedy. (*Id.* at ¶ 24). Plaintiff was advised that he must first file the remedy at the institution level. (*Id.*).

On December 4, 2014, Plaintiff filed Remedy Number 799415-A1 with the BOP Central Office, claiming "malicious use of restraints" by staff. (*Id.* at ¶ 25). On January 14, 2015, this remedy was rejected in concurrence with the Regional Office's rejection, which advised Plaintiff to follow the directions provided on prior rejection notices. (*Id.* at ¶ 26). The remedy was also rejected because Plaintiff failed to attempt informal resolution prior to submitting the remedy, he failed to submit the remedy at the institution level, and he submitted the appeal to the wrong office. (*Id.*). On December 22, 2014, Plaintiff resubmitted this appeal, designated as Remedy Number 799415-A2. (*Id.* at ¶ 27). On January 28, 2015, the remedy was rejected for the reasons stated in the previous rejection. (*Id.* at ¶ 28). Plaintiff failed to resubmit this remedy. (*Id.* at ¶ 29).

On February 12, 2015, Plaintiff filed Remedy Number 804330-A1 with the BOP Central Office, requesting mental health care. (*Id.* at ¶ 30). On May 29, 2015, this remedy was rejected in concurrence with the Regional Office's rejection, which advised Plaintiff to

follow the directions provided on prior rejection notices. (*Id.* at ¶ 31). The remedy was also rejected because Plaintiff submitted his remedy to the wrong level, failed to first submit the remedy at the institution level, and failed to attempt informal resolution prior to submitting his remedy. (*Id.*). Plaintiff did not resubmit this remedy. (*Id.* at ¶ 32).

On April 30, 2015, Plaintiff filed Remedy Number 815194-A1 with the BOP Central Office, claiming that he was "being denied proper medical care." (*Id.* at ¶ 33). On June 1, 2015, the remedy was rejected because it was untimely and Plaintiff failed to include a copy of the regional appeal. (*Id.* at ¶ 34). On May 15, 2015, Plaintiff resubmitted this appeal, designated as Remedy Number 815194-A2. (*Id.* at ¶ 35). On June 26, 2015, the remedy was rejected in concurrence with the BOP Regional Office's rejection, which advised Plaintiff to follow the directions provided on prior rejection notices, and because the remedy was submitted to the wrong level. (*Id.* at ¶ 36). Plaintiff failed to resubmit this appeal. (*Id.* at ¶ 37).

Defendant Samuels is the Director of the Federal Bureau of Prisons and is responsible for the general supervisory management and oversight of the agency. (*Id.* at ¶¶ 38, 39; Doc. 23, Ex. B, Declaration of Charles Samuels, Jr., ("Samuels Decl.") ¶¶ 1, 3). Defendant Samuels delegates many tasks to wardens and prison staff and does not have primary responsibility for inmates. (Doc. 23, SMF ¶ 40; Doc. 23, Ex. B, Samuels Decl. ¶ 3). Defendants Samuels' business office is located in Washington, D.C., and he does not

reside, work, or own real property in the State of Pennsylvania. (Doc. 23, SMF ¶ 41; Doc. 23, Ex. B, Samuels Decl. ¶ 4).

Defendant Ebbert is employed by the BOP as Warden of USP Lewisburg. (Doc. 23, SMF ¶ 42; Doc. 23, Ex. C, Declaration of David J. Ebbert ("Ebbert Decl."), ¶ 1). Defendant Ebbert's responsibilities as warden are managerial and oversight in nature. (Doc. 23, SMF ¶ 43; Ebbert Decl. ¶ 2; Doc. 23, Ex. C, Attach. 1, Position Description, Warden). Defendant Ebbert does not provide medical care to inmates. (Doc. 23, SMF ¶ 44; Ebbert Decl. ¶ 2). Medical Professionals in the Health Services Department at USP Lewisburg address the medical needs of the inmates. (Doc. 23, SMF ¶ 45; Ebbert Decl. ¶ 2).

Defendant Brown is employed by the BOP as the Health Services Administrator at USP Lewisburg. (Doc. 23, SMF ¶ 46; Doc. 23, Ex. D, Declaration of S. Brown ("Brown Decl.") ¶ 1). As Health Services Administrator, his duties do not involve providing medical care to inmates. (Doc. 23, SMF ¶ 47; Doc. 23, Ex. D, Attach. 1, Position Description for Health Services Administrator). Defendant Brown is an advisor to the administration regarding overall administrative management and operations of Health Services at USP Lewisburg. (Doc. 23, SMF ¶ 48; Doc. 23, Ex. D, Attach. 1, Position Description for Health Services Administrator). Defendant Brown supervises staff assigned to the medical department with respect to their non-clinical duties. (Doc. 23, SMF ¶ 49; Doc. 23, Ex. D, Attach. 1, Position Description for Health Services Administrator).

## III. **Discussion**

A *Bivens* action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685 F. Supp. 1335, 1338 (M.D.Pa. 1988). Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants seek an entry of judgment in their favor on the following grounds: (1) Plaintiff failed to properly exhaust his administrative remedies prior to filing suit; (2) Defendants Samuels, Ebbert and Brown lack personal involvement in the alleged constitutional violations and *respondeat superior* cannot form the basis of a *Bivens* action;

and, (3) the Court lacks personal jurisdiction over Defendant Samuels. (Doc. 22).

A.  Exhaustion

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 92.

Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

The Federal Bureau of Prisons ("BOP") has an administrative remedy procedure through which inmates can seek formal review of an issue relating to any aspect of his or her confinement. (Doc. 23, SMF ¶ 5, citing 28 C.F.R. § 542.10, *et seq.*). In order to exhaust appeals under the administrative review procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. (*Id.* at ¶ 6, citing 28 C.F.R. § 542.13). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident. (*Id.* at ¶ 7, citing 28 C.F.R. § 542.14). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. (*Id.* at ¶ 8, citing 28 C.F.R. § 542.15(a)). If the response of the Regional Director is not satisfactory, the inmate may then appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP. (*Id.* at ¶¶ 9, 10, citing 28 C.F.R. § 542.15(a)). No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. (*Id.* at ¶ 10, citing 28 C.F.R. § 542.15(a)). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the

BOP provides the inmate with a written notice explaining the reason for the rejection. (*Id.* at ¶ 11, citing 28 C.F.R. § 541.17(b)).

As stated, a search of BOP records was conducted for any administrative remedies filed by Plaintiff at the national/central office level during the time period from September 19, 2011, the date he arrived at USP Lewisburg, through February 1, 2016. (*Id.* at ¶ 15). This search revealed that Plaintiff filed eight administrative remedy appeals at the national while housed at USP Lewisburg. (*Id.* at ¶ 17). All eight of these administrative remedies were rejected for various reasons. (*Id.*). Specifically, the remedies were rejected because they were submitted on the wrong form or in improper form, they were initiated at the wrong level, they were not initiated at the institution level, and Plaintiff failed to attempt informal resolution prior to submitting the remedies. There is no evidence that Plaintiff properly resubmitted the appeals or corrected the deficiencies as advised.

Defendants have produced uncontroverted evidence which reveals that Plaintiff failed to properly exhaust his instant claims prior to initiating this action. *See* (Doc. 23-1, Ex. A, Attach. 4, Administrative Remedy Generalized Retrieval). Plaintiff failed to provide any evidence that he properly exhausted the available administrative remedies concerning his *Bivens* claims. Thus, it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Moreover, there is no indication or suggestion that prison officials engaged in any affirmative misconduct such that they obstructed, hindered, delayed or

prevented Plaintiff from pursuing administrative relief. *See Nyhuis*, 204 F.3d at 71 (stating that there is no futility exception to the exhaustion requirement under any circumstances). A prisoner is required to avail himself of the administrative remedies in order to satisfy the mandatory exhaustion requirement of the PLRA. Plaintiff's failure to properly pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims. Accordingly, Defendants are entitled to an entry of judgment in their favor based on Plaintiff's failure to properly exhaust the administrative remedy process. *See Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit, including a *Bivens* action").

B. <u>Personal Involvement</u>

"In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law." *Azzara v. Scism*, 2012 WL 722342, *2 (M.D. Pa. 2012) (Nealon, J.), citing *West*, 487 U.S. at 48; *Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992); *Sharpe v. Costello*, 2007 WL 1098961, *3 (M.D. Pa. 2007). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Mitchell v. Beard*, 492 Fed. Appx. 230, 235 (3d Cir. 2012) (finding that the prisoner's allegations against four of the

DOC defendants "that they are liable for improperly supervising those directly responsible for his injuries" were insufficient to state a claim). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs .... Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Additionally, it is well established that a plaintiff may not sue to recover monetary damages against federal officials in their official capacities because *Bivens* claims against the United States are barred by sovereign immunity. *Williams v. Warmerdorf, et al.*, 2008 U.S. Dist. LEXIS 76283, *5 (M.D. Pa. 2008) (Munley, J.) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 483 (1994); *Jaffee v. U.S.*, 592 F.2d 712, 717 (3d Cir. 1979)). To proceed against federal officials in their individual capacities, the plaintiff must allege "personal direction or . . . actual knowledge and acquiescence of constitutional violations." *Bartholomew v. Fed. Bureau of Prisons*, 2008 U.S. Dist. LEXIS 72787, 15-16 (M.D. Pa. 2008) (Kane, J.) (granting "summary judgment on the *Bivens* claims because [the defendants] are immune from suit in their official capacities and because they were not personally involved in any constitutional deprivation").

Defendants Samuels, Ebbert, and Brown assert that Plaintiff failed to allege their personal involvement and the doctrine of *respondeat superior* cannot serve as the basis of

14

liability in a *Bivens* action. (Doc. 22, at 8-11); *Bivens*, 403 U.S. 388; *see also Davis v. Miner*, 2007 U.S. Dist. LEXIS 30789, 1-2 (M.D. Pa. 2007) (Rambo, J.). Specifically, Defendants argue that Plaintiff failed to allege that Samuels, Ebbert or Brown were personally involved in any way in the alleged deliberate indifference to his serious medical needs. (Doc. 22, at 9). Further, any allegation of participation in the grievance or appeal process is insufficient to establish personal involvement, and non-medical defendants cannot be found liable for failing to respond to medical complaints by a prisoner who was being treated by medical staff. (*Id.*).

To the extent that Plaintiff is attempting to establish the personal involvement of Defendants by way of their participation in the grievance process, the filing of a grievance is not sufficient to show the actual knowledge necessary to establish personal involvement. *See White v. Bledsoe*, 2011 WL 2292279 (M.D. Pa. 2011) (Kane, J.) (holding that summary judgment was warranted in favor of the defendant for his role in responding to appeal of inmate's designation to SMU), *citing Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that they were involved in the underlying allegedly unconstitutional conduct); *Burnside v. Moser*, 138 Fed. Appx. 414, 416 (3d Cir.

15

2005) (ruling that failure of prison official to process an administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Additionally, for purposes of Eighth Amendment medical claims, non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Spruill*, 372 F.3d at 236. Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for

medically-based Eighth Amendment claims. *See, e.g., id.* at 236-37 (citing *Durmer*, 991 F.2d at 69); *Garvey v. Martinez*, No. 08-2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010); *Hodge v. United States*, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007). Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207.

Applying these constitutional benchmarks, it is apparent that Defendants Samuels, Ebbert, and Brown, non-medical Defendants, are entitled to an entry of judgment in their favor. The undisputed evidence reveals that these Defendants never provided any medical care or treatment to Plaintiff.

In summation, there are no allegations of personal involvement of Defendants Samuels, Ebbert, and Brown. *Respondeat superior* cannot form the basis of a *Bivens* claim; therefore, liability may not grounded on these Defendants' supervisory positions. Defendants Samuels, Ebbert, and Brown are therefore entitled to an entry of judgment in their favor on this ground. *See Washington v. Showalter*, 494 Fed. Appx. 268 (3d Cir. 2012) (affirming the District Court's dismissal of certain defendants for lack of personal involvement in the alleged constitutional violation).

C. <u>Personal Jurisdiction</u>

Lastly, Defendants argue that this Court lacks personal jurisdiction over Defendant

Samuels. (Doc. 22, at 11-12). Defendants state that Samuels is employed in the District of Columbia and has no contacts with the state of Pennsylvania. (*Id.* at 12).

Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322, "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" *Pennzoil Products Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). The Due Process Clause requires that nonresident defendants have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Id.* at 300 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Federal courts have recognized two types of personal jurisdiction, namely general and specific. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). General jurisdiction is appropriate when the defendant's contacts with the forum are "continuous and systematic" and when the cause of action "arises from the defendant's non-forum related activities." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir. 1996). Specific jurisdiction is properly exercised

when the plaintiff's cause of action arises from the defendant's forum-related activities, "such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In support of the instant motion, Defendants have submitted a declaration of Defendant Samuels in which he declares that his business office is located at the BOP Central Office in Washington, D.C., and he confirms that he does not live, work, or own real property in the Commonwealth of Pennsylvania.[2] (Doc. 23-1, Ex. B, Samuels Decl. ¶ 4). "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted). Plaintiff has neither addressed nor explained how Defendant Samuels has any contacts with the State of Pennsylvania such that he reasonably would anticipate being haled into Court here. Plaintiff has failed to prove that Defendant Samuels has the requisite minimum contacts to subject him to the jurisdiction of this Court. *See Mellon Bank*, 983 F.2d at 554 ("[w]here the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and

---

[2] The Court notes that it may consider affidavits in determining the existence of personal jurisdiction. *See Patterson ex rel. Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990); *Hairston v. Lappin*, 2013 WL 5701637, *16 n.6 (M.D. Pa. 2013).

systematic' contacts with the forum state (general jurisdiction)."). Thus, this Court lacks personal jurisdiction over Defendants Samuels and he is entitled to an entry of judgment in his favor on this ground.

## IV. Conclusion

Based on the foregoing discussion, Defendants' motion for summary judgment will be granted. An appropriate Order follows.

Date: May 19, 2016

Robert D. Mariani
United States District Judge